Birchard, C. J.
This case turns mainly upon questions of fact.
1. Were complainants actually members of the firm of P. W. Taylor & Co., and interested to the extent of one-third of the profits of the contract with the board of public works, for the construction of sections one to thirty-three inclusive, and for the Loramie Reservoir of the Miami Extension canal ?
2. Were P. W. Taylor and Nathaniel Medbury the other parties ?
3. Were the complainants, by the agreement of all the parties, to have one-third of the profits, and each of the others one-third?
These propositions are all put in issue by the answers, and the issues are to be determined by the proof adduced by the parties. The evidence has been fully discussed by counsel, and we are not aware that any great good would be attained by a detailed state *141 ment of the views we entertain respecting it, and think that our duty will be performed, and the interests of the profession best subserved by a brief statement, embracing merely the results of our investigation of the litigated facts.
"We are satisfied from the evidence, that the contract was originally let upon the bid of P. W. Taylor & Co., and that at that time this firm was composed of P. W. Taylor, Alfred Avery, and Elias Fassitt.
Secondly, that after the letting, by agreement made between themselves, Nathaniel Medbury was taken into the partnership upon the terms set forth in the answer of respondents, and. that the firm thus continued till the work *was completed, except as to the changes effected by the death of Taylor.
And thirdly, that complainants were never partners of the firm, and that if they were, there is an entire want of proof to establish the terms of the agreement. The testimony relied on to sustain the bill, is that of Col. Spencer. On interrogatory, he says he-never had any conversation with Avery & Fassitt, in which they spoke of either of the complainants as parties, and that Medbury never stated to him in terms that they were to be members of the firm. His words were, that he would so arrange as to provide for them. That he had but little hopes that the work could be-awarded on his own bid; but so far as he was concerned, it was not material whether awarded on his bid, Stadden & Channel’s, or Taylor & Co.’s, as it would amount to the same thing. The statement made by Taylor was, that they were to bid separately, and if the work was let on either bid, it was to be considered by them as a company; that the terms wore, that himself, Avery & Fassitt were to have one-third, and Medbury two-thirds; and Medbury was to divide his interest with complainants, but in what proportion he did not state.
Now, of this evidence, it is proper to remark, that Medbury ought not to be charged with the declarations of Taylor, made in his absence. And the same rule applies as to the others. But taking it entire, and it does not prove the alleged partnership set up in the bill, or amended bill, but a very different agreement. It. shows, if it shows anything, that Medbury, Taylor, Avery & Fassitt, were to compose the firm, and that if complainants had anything, it was by virtue of some secret arrangement between Med-bury and themselves. Fassitt & Avery never had any knowledge- *142 ■ of this agreement, and they can not be held as third parties, unless they have agreed to be such. Nor can Taylor. He only agreed that Medbury might come in with Taylor & Co. as partner. True, he says Medbury was to provide for Stadden & Channel out of his two-thirds; but how? As ^partner? That does not follow. That could not follow; for they could not become partners without the consent of the others. No man can be a partner of others without their assent. It is doubtless true, that there was an understanding before the letting, that Stadden & 'Channel were to derive some benefit through Medbury from the work, let it be given to which one of the other parties it might. But •if the whole were to be considered as partners, it is inconceivable that no writings should have been drawn, no witnesses called to hear the agreement, and that no one should know anything about it; that complainant should neither do or say aught concerning it until years had gone by, and all the risks had been run, and the job completed and found to be profitable. On the other hand, if ■there existed, prior to the letting, an agreement to form a partnership between Taylor, Medbury, and complainants, there is no way •of reconciling this conduct with the other facts in proof but by supposing it was abandoned before the work began, and some new .arrangement or compromise made with Medbury. Medbury said he would so arrange as to provide for them; he intended to do with them what was right. That “ Stadden must have an inter.est; he has neither capital nor influence, and $500 or a $1,000 will buy him out. and get rid of him.”
It is quite as probable that this arrangement was made in the lifetime of Medbury, as it is that complainants should keep silent ■ during the progress of a job of the extent of $322,000, and never be known as connected with it until its successful completion had developed the fact that the net profits upon it were $69,000.
Bill dismissed, but without prejudice to any rights that may exist against the estate of Medbury.